Marcus Schlitt v. Commissioner. Henry Golub v. Commissioner. Harry Schlitt v. Commissioner. Samuel Bram v. Commissioner.
Schlitt v. Commissioner
Docket Nos. 12399, 12400, 12401, 12402.
United States Tax Court
1948 Tax Ct. Memo LEXIS 169; 7 T.C.M. (CCH) 354; T.C.M. (RIA) 48108; June 9, 1948
*169 The assets of a completely liquidated corporation were distributed in kind as a liquidating dividend to its four stockholders in proportion to their stock interest. The stockholders sold the assets three days later to another corporation. Fair market value of the assets as of the date of distribution and the respective gains on liquidation, and subsequent sale of the assets, determined. Henry Halpern, C.P.A., 26 Court St., Brooklyn, N.Y., for the petitioners. Fred R. Tansill, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These proceedings, duly consolidated for trial and decision, involve income tax deficiencies for the calendar year 1940 with respect to the following petitioners and in the amounts specified: Petitioners
Docket No.
Deficiency
Marcus Schlitt
12399
$ 138.48
Henry Golub
12400
1,061.14
Harry Schlitt
12401
3,060.47
Samuel Bram
12402
2,896.21
The questions for decision are whether petitioners, as sole stockholders of a corporation in process of complete liquidation, realized gain or loss either from the distribution of assets in kind or upon the subsequent sale of the assets to another *170 corporation. Some of the facts were stipulated and oral testimony was offered. Findings of Fact The petitioners are individuals, all of whom reside in Brooklyn, New York. Marcus Schlitt filed his income tax return for 1940 on the cash basis with the collector of internal revenue at Boston, Massachusetts, while the other petitioners filed their respective returns on the cash basis with the collector of internal revenue for the first district of New York. The Exhibitors Poster & Supply Co., Inc., (hereinafter referred to as Poster), was incorporated under the laws of the State of New York in 1928. Its capital stock consisted of 200 shares of common stock (par value $100), and 50 shares of preferred stock (par value $100), aggregating $25,000. The following sums were paid in by the stockholders as capital and represent the original cost of their respective stock interests: Shares
Shares
Com-
Pre-
mon
ferred
Stockholder
Amount
Stock
Stock
Harry Schlitt
$ 9,375.00
75
18 3/4
Samuel Bram
9,375.00
75
18 3/4
Henry Golub
6,250.00
50
12 1/2
Total
$25,000.00
200
50
Later in 1928 the three stockholders caused to be issued six shares *171 of common stock and one and one-half shares of preferred stock out of their respective interests to Marcus Schlitt, for which the latter paid no monetary consideration. At the time of the dissolution of Poster in 1940 its outstanding stock was held by petitioners in the following amounts and proportions: Common
Preferred
Per-
Stockholder
Stock
Stock
centage
Harry Schlitt
72 3/4
18 3/16
36 3/8
Samuel Bram
72 3/4
18 3/16
36 3/8
Henry Golub
48 1/2
12 1/8
24 1/4
Marcus Schlitt
6
1 1/2
3
Total Shares
200
50
100
Harry Schlitt, Samuel Bram and Henry Golub were also copartners in a partnership doing business in Boston, Massachusetts, under the trade name of Exhibitors Advertising & Supply Co., hereinafter referred to as the partnership. Harry Schlitt and Samuel Bram each held a 37 1/2 per cent interest in the partnership, while Henry Golub held the remaining 25 per cent interest. Since its formation, Poster engaged in a special field of the advertising business which pertained to the announcement of current and advance attractions shown by moving picture theatres. Advertising materials of various types and sizes were normally disployed *172 in lobbies and on billboards. These materials were leased out to approximately 200 local theatres in New York City for the periods both antedating the arrival of new films and for the duration of the immediate showings. Poster acquired some of its materials from local manufacturing concerns and the balance from film exchanges operated by the large movie producers. Purchases from the latter distributing centers were made in the names of local theatres and for cash. Poster gradually established an inventory of materials which was used not only in connection with current movies but also to advertise older productions displayed by second and third run movie houses. Approximately 65 per cent of Poster's inventory was new picture stock which was stored at 630 Ninth Avenue, New York City, its regular place of business. The remainder, its old picture stock, was kept in a nearby warehouse. Every three months the worn or damaged materials were disposed of. Practically all the stock which related to movies no longer in circulation was regularly transferred to the warehouse. Each item was rented out to the theatres at an average of four times during its useful life. The partnership was operated *173 in Boston as a branch of and secured all its advertising material from Poster. It serviced in excess of 150 theatres and increased its weekly proceeds from $300 in 1936 to $800 in 1940. Marcus Schlitt served as manager of the Boston office until 1940. On or about March 8, 1940, Harry Schlitt and Samuel Bram, on behalf of themselves, Henry Golub, and Marcus Schlitt entered into an agreement with Advertising Accessories, Inc. (a corporation formed in Delaware with an office in New York City) which provided as follows: "1. Sellers agree that not later than 6 months from date hereof they will have caused the dissolution of Poster and the due transfer or distribution by Poster to them of all of the assets of all kinds of Poster * * *. Sellers agree and warrant that such transfer to them shall comply with the laws of the State of New York in reference thereto. "2. Sellers hereby agree to sell as of March 11th, 1940 all of the assets of Poster so distributed or transferred to them including all contracts with exhibitors, all accessory advertising and other stock on hand, rented and outstanding, * * * all furniture, fixtures and equipment, * * * and all other assets of whatsoever kind *174 and nature, (except cash and accounts receivable) of, and however used in conjunction with the operation of such business, and whether situated in such premises in New York, or Boston, or elsewhere, to Advertising, for a total purchase price of $75,000.00 (without interest thereon); such $75,000.00, however, to be payable to Sellers in weekly installments, over a period of two hundred and fifty (250) weeks, of $300.00 a week, beginning March 11th, 1940 and continuing weekly thereafter for two hundred and fifty (250) weeks, until the full amount is paid. Advertising agrees to buy such business, and to pay the foregoing price to Sellers in such weekly payments of $300.00 a week for two hundred and fifty (250) weeks to Sellers until the aforesaid purchase price of $75,000.00 (without interest thereon) is and has been paid to it." In the above agreement of sale the sellers further contracted to transfer their right, title, and interest in outstanding contracts, good will, and the names, Exhibitors Poster & Supply Co., Inc., and Exhibitors Advertising & Supply Co., to the purchaser, and also agreed not to compete against the latter for a period of 10 years. None of the petitioners held *175 any stock interest in the purchasing corporation. Henry Golub and Marcus Schlitt did not sell their respective interests in the liquidated assets to the other petitioners prior to the conveyance to Advertising Accessories, Inc., but were parties in interest to the contract of March 8, 1940, with Advertising Accessories, Inc. On or about March 8, 1940, Harry Schlitt and Samuel Bram entered into separate employment contracts with Advertising Accessories, Inc., for a term of five years at a salary of $100 per week. These petitioners were granted an option to terminate their respective positions after two years' time but agreed not to participate in any related phase of the entertainment business for a period of five years from the contract date. Both parties were thereafter employed and each was paid the compensation specified, and performed the services as required in the employment agreements. On the same date, Poster and the four petitioners were parties to an agreement wherein they ratified the sales contract previously described and approved dissolution of Poster. They further agreed to distribute the $75,000 selling price as follows: first, meet expenses connected with the sale, *176 if any; second, pay $5,000 to Marcus Schlitt; third, pay 25 per cent of the remaining balance to Henry Golub, and, fourth, divide the net balance between Harry Schlitt and Samuel Bram in equal shares. On March 8, 1940, Poster distributed all its assets to its stockholders as a liquidating dividend in proportion to their respective stock holdings and it was dissolved. The partnership was terminated and dissolved on March 11, 1940. Among the assets distributed were cash and accounts receivable in the amount of $3,200 and office furniture, fixtures, equipment and a Dodge truck, all valued at $2,770 on the distribution date. The liquidating dividend also included an inventory of advertising materials and supplies used in New York and Boston which had a value of $60,000 on March 8, 1940. This stock of goods included materials stored in a nearby warehouse and materials in circulation among the local theatres at the time of dissolution. All the corporate assets received in liquidation (exclusive of cash and accounts receivable) were sold by the petitioners to Advertising Accessories, Inc., for $75,000 and in accordance with the above selling agreement. The cash and accounts receivable *177 were apportioned to and the sales proceeds were received by the petitioners as follows: Cash and
Accounts
Sales
Name
Receivable
Proceeds
Harry Schlitt
$1,200
$26,250
Samuel Bram
1,200
26,250
Henry Golub
800
17,500
Marcus Schlitt
5,000
Totals
$3,200
$75,000
Poster filed Federal corporation income tax returns on the cash basis for the years 1938, 1939, and 1940 with the collector of internal revenue for the third district of New York. The partnership filed partnership returns on the cash basis for the years 1939 and 1940 with the collector at Boston, Massachusetts. For the year 1940 the petitioners did not return any gain or loss on the liquidation but did report long-term capital gains realized from the sale and used the installment sale basis in their returns. Petitioners no longer ask to report their profit on the installment basis and that question is not involved in these proceedings. Respondent in his determination found that petitioners realized long-term capital losses on the liquidation, basing his action on a holding that the total assets on the date of distribution had a fair market value of $8,200, including the cash and accounts *178 receivable of $3,200. The difference between the cost of the shares in the amount of $25,000 and the value of the assets measured the loss as determined. Respondent further determined that the respective petitioners realized short-term capital gains incident to the sale of the assets to Advertising Accessories, Inc. Opinion ARUNDELL, Judge: As the questions raised in these proceedings are entirely factual, it is only necessary for us to say a word in explanation of the findings as made. The fair market value of the assets of Poster which were distributed in liquidation to the stockholders on March 8, 1940, is the real point in controversy. The parties have stipulated that the cash and accounts receivable had a value on that date of $3,200 and the furniture and equipment were worth $2,770, thus leaving for us to decide the value of Poster's inventory which had been distributed in kind to the stockholders. Rather satisfactory testimony was offered, and in some detail, as to the quantity and value of the posters and other advertising paraphernalia stored in Poster's main place of business. In fact, a physical inventory was taken on the day following distribution, and the value of *179 the inventory was testified to by several qualified witnesses. The value of this part of the inventory was fixed by the witnesses in the neighborhood of $48,000. No physical inventory, however, was taken of that part of the inventory which was stored in a warehouse, or that part of the advertising matter then on display and rented to the various theatres with which Poster was in the habit of doing business. A rough estimate only was given as to this part of the inventory we have to value. From a study of the entire record, we have reached a figure of $60,000 as the value of the inventory on the date of distribution, and this figure is set forth in our findings of fact. We cannot accept petitioner's contention that the sales price of $75,000 paid to them by Advertising Accessories, Inc., is indicative of value, even though the sale took place within three days of the receipt by petitioners of the liquidating dividend from Poster. Several reasons prompt this conclusion, among which may be mentioned the fact that payment was to be made over a five-year period at $300 per week with no interest on the deferred payments, and the further fact that under the agreement all stockholders obligated *180 themselves to refrain from entering a competing business for a period of years. Nor does the record warrant a finding of value for certain intangibles which petitioners claim came to them in liquidation and were in turn sold to Advertising Accessories, Inc. Not only was no testimony offered as to the value of these named intangibles, but the income tax returns of Poster, which had been offered in evidence, disclosed that for each of the three years immediately preceding the sale, Poster reported a net loss from the operation of its business. It follows, therefore, that the difference between the basis of the petitioners' respective stock interest in Poster, totaling $25,000, and the fair market value of the liquidating dividend in the amount of $65,970 is taxable as a long-term capital gain, allocable among the four stockholders according to the proportion of stock ownership which existed on March 8, 1940. The difference between the $75,000 received in payment from Advertising Accessories, Inc., and the basis of the property disposed of (exclusive of cash and accounts receivable), namely, $62,770, would constitute gain taxable in its entirety, to be approtioned among the several *181 petitioners in accordance with their respective shares in the proceeds as agreed to by them in their contract of March 8, 1940. One other matter may require comment, although its tax significance is not too clear. Respondent determined that the assets received by the two minority stockholders were sold by them to the majority stockholders prior to the disposition of the assets to Advertising Accessories, Inc., by the contract of March 8, 1940. The testimony is emphatic, however, that there was no sale of the minority interest to the majority stockholders, and that all four petitioners were parties to the sale to Advertising Accessories, Inc. Decisions will be entered under Rule 50.